UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| JOHN HARTWELL COCKE, as Executor of the Estate of WILLIAM BYRON COCKE, *et al.*, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CV419-169 |
| UNITED STATES OF AMERICA, *et al.*, | ) ) ) ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

Before the Court is Defendants Aviation Development Group, LLC and Thomas Huff's Motion for Leave to Amend their Answer to Plaintiffs' Second Amended Complaint to Add a Crossclaim against Defendant Kristen Hunter, as Personal Representative of the Estate of Randall Hunter.  Doc. 156.

**I.  BACKGROUND**

This case arises from a plane crash in Ellabell, Georgia that killed the pilot, Randall Hunter, and two passengers, Catherine and William

Cocke. Doc. 140 at 2-3. The facts are already familiar to the Court. In brief:

> On August 28, 2017, shortly after takeoff from Savannah/Hilton Head International Airport, the plane piloted by Randall Hunter experienced total engine failure. Randal Hunter contacted the Savannah Air Traffic Control Tower, which is operated by air traffic controllers employed by the Federal Aviation Administration ("FAA"), for assistance. In response, the air traffic controller advised Randall Hunter to either (1) return to the Savannah/Hilton Head International Airport or (2) attempt to glide towards an airport located in Statesboro, Georgia. Randall Hunter informed the air traffic controller he would attempt to glide towards the Statesboro airport. Approximately one minute later, after Randall Hunter had turned the plane towards Statesboro, the air traffic controller informed Randall Hunter that Cypress Lakes Airport was closer to the plane's position than the Statesboro airport. Randal Hunter turned the plane again towards Cypress Lakes Airport, however, the plane crashed before reaching Cypress Lakes, killing Randall Hunter and the passengers, William and Catherine Cocke.

See Doc. 135 at 2 (cites omitted).

Representatives of the Cocke family filed suit[1] against the United States of America, Aviation Development Group, LLC ("ADG"), Thomas Huff, and the estate of the deceased pilot Hunter ("Hunter Estate").[2] *Id.*

---

[1] Plaintiffs initially named Continental Motors, Inc., but have since resolved their claims against that defendant and dismissed it from the case. Doc. 108.

[2] The Hunter Estate filed its own lawsuit related to the crash, and the only remaining defendant in that case is the United States. *See* Case No. 4:19-cv-00174, doc. 71. The two cases have been consolidated solely for purposes of discovery. Doc. 143.

Plaintiffs recently resolved their claims against the Hunter Estate, and the Court approved the settlement. Doc. 164. Plaintiffs' Motion to Dismiss the Hunter Estate is pending before the District Judge. Doc. 166.

From the beginning of this case, initially filed July 12, 2019, Plaintiffs have asserted that the pilot, Randall Hunter, was an "agent, servant, employee and/or representative of the defendants ADG and/or HUFF, and was operating the accident aircraft in furtherance of the business interests of ADG and/or HUFF, including when acting as the pilot in command of the accident aircraft as detailed herein." *See* Doc. 1 at 9 & Doc. 140 at 8. ADG and Huff have denied these allegations. *See, e.g.*, Doc. 48 at 5 & Doc. 147 at 5. Now, almost two years after Plaintiffs filed their Complaint asserting that ADG and/or Huff are vicariously liable for Randall Hunter, ADG and Huff first raise the issue of a potential indemnification claim against the Hunter Estate. Doc. 156 at 1-2. They seek to amend their Answer to Plaintiffs' Second Amended Complaint, doc. 147, filed January 26, 2021, to add a crossclaim against the Hunter Estate. Doc. 156. Plaintiffs and the Hunter Estate oppose the motion. Docs. 161, 163 & 175.

## II.     ANALYSIS

### A.     Rule 15(a) Motion to Amend Standard

ADG and Huff filed their motion on April 26, 2021. *See* doc. 156. Because the time during which they may have filed an amended answer as a matter of course has passed, *see* Federal Rule of Civil Procedure 15(a)(1)(A), the Court will evaluate the motion pursuant to Rule 15(a)'s liberal "when justice so requires" standard.[3] Fed. R. Civ. P. 15(a)(2). While Courts should liberally grant leave to amend, "a motion for leave to amend may be appropriately denied (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *In re Engle Cases*, 767 F.3d 1082, 1108-1109 (11th Cir. 2014) (internal cites omitted); *see also Campbell v. Emory*

---

[3] The Court recognizes that this case might more appropriately fall within the scope of Rule 16, rather than Rule 15(a), because the Court issued a scheduling order in which it set the deadlines for subsequent proceedings. *See* doc. 152. This scheduling order may only be modified for "good cause." Fed. R. Civ. P. 16(b)(4). Out of an abundance of caution, and recognizing that the Court's scheduling order did not explicitly state a deadline for amending the pleadings, *see* doc. 152, *but cf.* S.D. Ga. L.R. Civ. P. 16.3 (requiring motions to amend the pleadings be filed within sixty days after issue is joined in the case), the Court shall proceed to evaluate defendants' request pursuant to Rule 15(a). Nonetheless, the Court's analysis under Rule 16(b) would not lead to a different outcome.

4

*Clinic*, 166 F.3d 1157, 1162 (11th Cir. 1999) ("This liberal discretion is not abused when the amendment would prejudice the defendant, follows undue delays, or is futile."). ADG and Huff, as the moving parties, bear the burden of establishing that they are entitled to amend. *In re Engle Cases*, 767 F.3d at 1119, n. 37.

Here, ADG and Huff's delay and apparent dilatory motive, coupled with the prejudice the Hunter Estate would incur should the amendment be allowed, support a denial of the motion.

### B.   Defendants' Delay

" 'Although generally, the mere passage of time, without more, is an insufficient reason to deny leave to amend…, undue delay may clearly support such a denial.'" *In re Engle Cases*, 767 F.3d at 1109 (quoting *Hester v. Int'l Union of Operating Eng'rs*, 941 F.2d 1574, 1578-79 (11th Cir. 1991)); *see also Brinson v. Providence Community Corrections*, 2018 WL 4059379, at * 4 (S.D. Ga. August 24, 2018) (noting that a district court has discretion to deny leave to amend when the moving party offers no adequate explanation for a lengthy delay, and collecting cases supporting same). ADG and Huff filed their initial Answer in this matter on October 7, 2019. *See* doc. 48. At the time they filed their Answer to

5

Plaintiffs' Second Amended Complaint on January 26, 2021, doc. 147, they had been parties to this case for over 15 months. The facts underlying their proposed indemnification claim against the Hunter Estate have been apparent from the beginning of the case. ADG and Huff present no compelling justification for their delay in amending their Answer to assert the crossclaim, or for their failure to raise it in their Answer filed in January of this year. "[A] district court has discretion to deny leave to amend when…the moving party offers no adequate explanation for a lengthy delay." *In re Engle Cases*, 767 F.3d at 1119.

Initially, ADG and Huff argued that there would be no delay in the resolution of this case were they permitted to amend their answer, because a trial date is not set, dispositive motions are not due until April 8, 2022, and the proposed amended answer can be filed without delay as it is attached as an exhibit to the motion. Doc. 156 at 2. But ADG and Huff's argument misses the mark, as the "delay" inquiry is more appropriately concerned with the amount of time the moving party has had to cure any deficiencies in the pleading at issue. *See, e.g., Hester*, 941 F.2d at 1578-79 (affirming denial of motion to amend where moving party "inexplicably waited a very long time to [amend his complaint].");

*Campbell*, 166 F.3d at 1162 (finding delay where the facts upon which the claims to be added were based were available at the time the initial complaints were filed, and motion for leave to amend was filed after significant time had passed); *Brinson*, 2018 WL 4059379 at *5 (discussing the length of time that passed *before* the plaintiff filed her motion to amend her complaint).

In their reply brief, ADG and Huff contend for the first time that they were not aware of the need to pursue a crossclaim against the Hunter Estate for indemnification until they recently received its responses to Requests for Admission that indicate an apparent "change in perspective" as to Randall Hunter's relationship with ADG and Huff. Doc. 171 at 5-6. They argue that the Hunter Estate has changed positions, and is now admitting that Randall Hunter was "an employee, agent, servant and/or representative of ADG" and "acting within the course and scope of his employment/agency with ADG/Huff at the time of the crash of the subject flight." *Id.* at 6. This change in position, they claim, is new information that supports their request for leave to amend. It is telling that Defendants did not raise this argument in their initial brief in support of their motion to amend filed on April 26, 2021, doc. 156,

despite receiving the responses on April 23, 2021, *see* doc. 171 at 7. Moreover, the Hunter Estate's alleged change in position does not constitute new information that justifies the Defendants' delay in asserting their crossclaim.

Under Georgia law, "if a person is compelled to pay damages because of negligence *imputed to him* as the result of a tort committed by another, he may maintain an action for indemnity against the person whose wrong has thus been imputed to him." *District Owners Ass'n, Inc. v. AMEC Environmental & Infrastructure, Inc.*, 322 Ga. App. 713, 715-716 (2013) (emphasis in original). ADG and Huff have been aware since the inception of this case that one of Plaintiffs' theories of liability is that ADG and Huff are vicariously liable for the actions of Randall Hunter. *See generally* doc. 1, doc. 25, doc. 140. Regardless of the Hunter Estate's position as to whether Randall Hunter was acting on behalf of ADG or Huff at the time of the crash, the Plaintiffs have always sought damages from them, in part, because of the alleged negligence of Hunter. Thus, the grounds for the proposed crossclaim have existed from the beginning of this case. *See Campbell*, 166 F.3d at 1162 (no abuse of discretion where district court denied motion to amend based, in part, on moving party's

delay, where facts supporting proposed amendment were available at the time the initial pleadings were filed).

### C. Defendants' Dilatory Motive

In addition to the undue delay discussed above, the timing of ADG and Huff's motion, coupled with the history of this case, points to a dilatory motive.

After Plaintiffs settled with and dismissed Continental Motors in August 2020, ADG and Huff opposed Plaintiffs' Motion for Leave to File Second Amended Complaint on the grounds that permitting Plaintiffs to "delete" the dismissed Continental Motors from the Complaint would prejudice their ability to allocate damages to non-parties. Doc. 122. This argument was based on a recent Georgia Court of Appeals decision, *Alston & Bird, LLP v. Hatcher Management Holdings, LLC*, 843 S.E.2d 613 (Ga. App. 2020), that could potentially impact their ability to apportion damages under Georgia law should Plaintiffs settle with and dismiss all but one defendant. *See* Doc. 135 at 3-4. That decision is currently on appeal to the Georgia Supreme Court, *Alston & Bird v. Hatcher Management Holdings, LLC*, S20G1419, docketed February 1, 2021.

9

This motion was filed shortly before Plaintiffs sought the Court's approval of their settlement with the Hunter Estate. *See* doc. 156 (filed April 26, 2021), doc. 159 (filed May 6, 2021). Presumably fearful that another co-defendant would be removed from Plaintiffs' Complaint, ADG and Huff are apparently attempting to assert a crossclaim against the Hunter Estate to keep this now-settled party in the case. The timing of the motion indicates a dilatory motive, potentially seeking to delay these proceedings until the Georgia Supreme Court issues its ruling. *See AMF Holdings, LLC v. Elie*, 2016 WL 10565274 (N.D. Ga. November 2, 2016) (denying motion to amend where history of the case and timing of the motion indicated a dilatory motive).

### D.  Prejudice to the Hunter Estate

The prejudice to the Hunter Estate should ADG and Huff's motion be granted also weighs in favor of denial. The Hunter Estate has settled with Plaintiffs, the Court has approved that settlement, doc. 164, and Plaintiffs have filed a motion to dismiss it from the case, doc. 166. Should ADG and Huff be permitted to amend their Answer to assert a crossclaim, this now-settled party will be brought back into the action after

negotiating a resolution based on the claims that were in existence at the time of those negotiations.

While ADG and Huff point out that the Hunter Estate will still be an active participant in this matter based on the consolidation of this case with its case against the United States, doc. 171 at 9, this argument fails to distinguish the Hunter Estate as the Plaintiff in its own prosecution from the Hunter Estate as a defendant should ADG and Huff be permitted to proceed. Should the Hunter Estate be brought back into the case as a defendant, after it has resolved the Plaintiffs' claims against it, the defense of the indemnification claim will certainly require different discovery than it might pursue in its case against the United States. *See, e.g., Elema-Schonander, Inc. v. K.C.F. Medical Supply Co., Inc.*, 869 F.2d 1124, 1126 (8th Cir. 1989) (affirming denial of motion to amend where district court found that it "would completely alter the posture and complexion of the case, would prejudice the [opposing party] and would require additional discovery which would undoubtedly delay the case.").

The additional cost the Hunter Estate will incur after settling its claims with Plaintiffs constitutes sufficient prejudice, particularly when weighed against the minimal prejudice that might be faced by ADG and

Huff should the motion be denied. As they point out in their supporting memorandum, if they are not allowed to assert their crossclaim in this case, they "will have no choice but to file a new case asserting their indemnity claim. . . ." Doc. 171 at 5. A denial of the Motion to Amend will not preclude them from asserting any existing indemnification claim against the Hunter Estate, albeit in a different action. They briefly mention the risk of possibly inconsistent verdicts should they be forced to file a new case to assert their indemnity claim, but do not present any actual argument to substantiate this conclusory statement. *See* doc. 171 at 5. On balance, the prejudice to the Hunter Estate outweighs any potential prejudice to ADG and Huff and supports a denial of the motion to amend.

### III.   CONCLUSION

Because ADG and Huff unduly delayed asserting their crossclaim and are acting with a dilatory motive, and because the proposed amendment would prejudice the Hunter Estate, the Court **REPORTS AND RECOMMENDS** that their motion for permission to file an

amended answer to assert a crossclaim against the Hunter Estate be **DENIED**. Doc. 156.

**SO REPORTED AND RECOMMENDED**, this 9th day of June, 2021.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA