**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

JOHN HARTWELL COCKE, as Executor of
the Estate of WILLIAM BYRON COCKE,
Deceased, and as Executor of the Estate of
CATHERINE CRICHTON COCKE,
Deceased; WILLIAM RUFFIN COLEMAN
COCKE; WILLIAM MARSTON BECKER,
as Conservator of E.C.C., a minor, as
Conservator of J.S.C., a minor, as Conservator
of C.E.C., a minor, as Conservator of P.S.G.C.,
a minor; and JOHN HARTWELL COCKE and
VIRGINIA FRANCES COCKE, as Guardians
of E.C.C., a minor, as Guardians of J.S.C., a
minor, as Guardians of C.E.C., a minor, and
Guardians of P.S.G.C., a minor;,

      Plaintiffs,

        v.

THE UNITED STATES OF AMERICA;
AVIATION DEVELOPMENT GROUP, LLC;
and THOMAS HUFF,

      Defendants.

CIVIL ACTION NO.: 4:19-cv-169

## O R D E R

This case emerges out of a tragic airplane crash that killed William Byron Cocke and Catherine Crichton Cocke ("Decedents"). (See generally doc. 387.) Plaintiffs are: John Hartwell Cocke, as Executor of Decedents' estates; William Ruffin Coleman Cocke in his individual capacity; William Marston Becker, as Conservator of Decedents' minor children; and John Hartwell Cocke and Viginia Frances Cocke, as Guardians of Decedents' minor children. (Id. at pp. 3–4.) Defendants are: the United States of America (hereinafter, the "Government"), being sued under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §2671, et seq.; Aviation

Development Group, LLC ("ADG"), a Georgia LLC; and Thomas Huff, the sole member of ADG. (Id. at pp. 4–7.)  The Government has also filed a crossclaim against Defendants ADG and Huff ("the Cross Defendants").  (Doc. 92.)  Before the Court is the Government's partial Motion to Dismiss, in which it argues that certain claims Plaintiffs have raised are barred by sovereign immunity and that this Court consequently lacks subject matter jurisdiction over those claims. (Doc. 428.)  Plaintiffs and the Cross Defendants have each filed a Response.  (Docs. 461, 481.) The Government has filed a Reply to Plaintiffs' Response, (doc. 515), and the Cross Defendants' Response, (doc. 508).[1]  After carefully considering the parties' arguments, the Court **GRANTS** the Government's Motion to Dismiss.  (Doc. 428.)

## BACKGROUND

Plaintiffs allege the following in their Fourth Amended Complaint.  (Doc. 387.)  On August 28, 2017, Decedents were killed in a plane crash resulting from an in-flight engine failure.  (Id. at p. 9.)  The aircraft departed from the Savannah/Hilton Head International Airport for a flight towards Atlanta, Georgia.  (Id. at p. 11.)  Approximately five minutes after takeoff, the pilot declared an emergency and informed the Savannah Air Traffic Control Tower ("SAV ATCT") of the engine failure.  (Id.)  The air traffic controller on duty ("SAV ATC") provided the pilot with two options for landing: either return to the Savannah airport or attempt to glide towards an airport

---

[1] The Government notes that the Cross Defendants' Response was filed after the Court's May 23, 2025, deadline for responding to civil motions other than motions for summary judgment, and instead was filed on the June 9, 2025, deadline for responding to motions for summary judgment.  (Doc. 508, p. 1.)  The Government urges the Court to disregard the Cross Defendants' Response under Local Rule 7.5, which states that a failure to timely respond to a motion "shall indicate" that the motion is unopposed.  (Id.)  L.R. 7.5 does not mandate that untimely responses be disregarded and instead grants the Court discretion over whether to consider a late response.  Odom v. Coastal States Auto. Grp. Mgmt., LLC, No. 4:20-cv-264, 2022 WL 3586693, at *5 (S.D. Ga. Aug. 22, 2022).  While the Cross Defendants' tardiness is objectionable, their response was not egregiously tardy and addresses the substantive arguments raised by the Government in its Motion.  As such, the Court declines to disregard the Cross Defendants' Response.  See id. (declining to deem a motion unopposed where a response was filed thirteen days after the deadline).

in Statesboro, Georgia. (Id. at p. 12.) The pilot determined that he could not make it to the Savannah Airport and turned the aircraft towards Statesboro, resulting in a significant loss of energy and altitude that substantially reduced the aircraft's glide range. (Id. at pp. 12–13.) As the aircraft continued to lose altitude, the pilot asked SAV ATC for the distance to the Statesboro airport. (Id. at p. 13.) After some initial confusion, SAV ATC informed the pilot that Statesboro was 20 miles away. (Id.) Faced with a failing engine and losing both energy and altitude, the pilot determined that the aircraft likely could not make it to Statesboro. (Id.)

SAV ATC then provided the pilot with a third option for landing—the Cypress Lakes Airport in Bloomingdale, Georgia. (Id.) Cypress Lakes was much closer to the aircraft's position when the emergency was first declared and was visible on the SAV ATC's Radar Video Map ("RVM") but was not initially presented as an option to the pilot. (Id.) The pilot by this point had no choice but to turn the aircraft towards Cypress Lakes, losing substantial energy and altitude in the process. (Id. at p. 14.) Attempting to reach Cypress Lakes proved too much for the failing aircraft, and the plane crashed in a wooded swamp area en route to Cypress Lakes. (Id. at pp. 14–15.) Decedents died in the crash. (Id. at p. 15.)

Another airport, Briggs Field, was also available and was much closer to the aircraft's initial position during the emergency than the Statesboro airport. (Id. at p. 14.) However, the airport was not depicted on SAV ATC's RVM and was never presented to the pilot as an option for landing. (Id.; doc. 461-12, p. 4.) The failure to depict Briggs Field was allegedly due to SAV ATCT's ignorance of the airport's existence. (Doc. 461-12, p. 5.) John Hall, the manager for the SAV ATCT at the time (the "SAV ATM"), has stated that the facility was unaware of Briggs Field before the crash. (Doc. 461-13, p. 3.) As facility manager, SAV ATM was responsible for the

data displayed on the RVM.  (See doc. 428-13, p. 3.)  Others at SAV ATCT have also stated that the facility did not know of Briggs Field before the crash.  (Doc. 461-14, p. 5.)

Plaintiffs brought this wrongful death and survival action seeking damages arising from the airplane crash.  (Doc. 387, p 2.)  Plaintiffs allege that the failure to list Briggs Field on the RVM constitutes negligence by the Government.  (Id. at p. 20.)  Allegations pertinent to the present Motion include that the Government "violated air traffic control policies, procedures, rules and/or regulations by providing . . . controllers with an RVM . . . that was inaccurate" and that the RVM that was provided "failed to list certain airports that were safe and appropriate for the subject aircraft to land."  (Id.)

The Government moves to dismiss all claims relating to the design and content of SAV ATCT's RVM pursuant to Rules 12(b)(1) and 12(h)(3) of the Federal Rules of Civil Procedure. (Doc 428, p. 1.)  The Government claims that it has not waived its sovereign immunity for such claims under the FTCA and that this Court thus lacks subject matter jurisdiction over them.  (Id.) Specifically, the Government argues that these claims are barred by the FTCA's discretionary function exception.  (Id. at pp. 8–19.)  This constitutes a factual attack on the Court's subject matter jurisdiction.  See OSI, Inc. v. United States, 285 F.3d 947, 951 (11th Cir. 2002) (citations omitted).

**STANDARD OF REVIEW**

A court may dismiss a complaint when it lacks subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  Motions pursuant to Rule 12(b)(1) take one of two forms: a "facial attack" on subject matter jurisdiction based on the complaint's allegations taken as true or a "factual attack" based on evidentiary matters outside the pleadings.  McElmurray v. Consol. Gov't of Augusta-Richmond Cnty., 501 F.3d 1244, 1251 (11th Cir. 2007) (citing Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990)).  In the "factual attack" context, a court considers

whether subject matter jurisdiction tangibly exists in fact, irrespective of the complaint's allegations. Id. When faced with such a challenge to subject matter jurisdiction, a plaintiff has the burden to prove facts which show jurisdiction exists over its claims. OSI, Inc., 285 F.3d at 951.

To resolve a factual attack, a court "may consider extrinsic evidence such as testimony and affidavits," rather than being constrained to the allegations in the complaint. Morrison v. Amway Corp., 323 F.3d 920, 924 n.5 (11th Cir. 2003) (citation omitted). Courts are "free to weigh the facts," subject to clearly erroneous review, without viewing them in the light most favorable to the plaintiffs. Carmichael v. Kellogg, Brown & Root Servs., Inc., 572 F.3d 1271, 1279 (11th Cir. 2009). In deciding a fact-based motion to dismiss for lack of subject matter jurisdiction, a court may dismiss on the basis of (1) "the complaint supplemented by undisputed facts evidenced in the record" or (2) "the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Williamson v. Tucker, 645 F.2d 404, 412 (5th Cir. 1981).[2] And while plaintiffs are entitled to a reasonable opportunity for discovery and a hearing on this issue, courts are empowered to decide factual motions on affidavits alone, where appropriate, so long as its factual determinations are identified and explained. Id. at 413–14 (citations omitted); see also Fed. R. Civ. P. 43(c) ("[T]he court may hear [a motion] on affidavits or may hear it wholly or partly on oral testimony or depositions."). Furthermore, courts are to "use their judicial experience and common sense in determining whether" a case meets federal jurisdictional requirements. Roe v. Michelin N. Am., Inc., 613 F.3d 1058, 1062 & n.5 (11th Cir. 2010) (citations omitted).

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

**DISCUSSION**

As a sovereign entity, the Government is immune from suit unless it expressly consents and waives its sovereign immunity. United States v. Mitchell, 463 U.S. 206, 212 (1983). "If there is no specific waiver of sovereign immunity as to a particular claim filed against the Government, the court lacks subject matter jurisdiction over the suit." Zelaya v. United States, 781 F.3d 1315, 1322 (11th Cir. 2015) (citing F.D.I.C. v. Meyer, 510 U.S. 471, 475–76 (1994)). "Once a waiver of sovereign immunity is recognized, it still 'must be strictly construed in favor of the United States' and 'not enlarged beyond what the language of the statute requires.'" Smith v. United States, 14 F.4th 1228, 1231 (11th Cir. 2021) (quoting United States v. Idaho ex. Rel. Dir., Idaho Dep't of Water Res., 508 U.S. 1, 7 (1993)).

Plaintiffs bring this suit under the FTCA, which waives the United States' sovereign immunity from suit in federal courts for its employees' negligence. See 28 U.S.C. § 1346(b). Thus, under the FTCA, the Government can be held liable for its employees' torts in accordance with the laws of the state where the tort occurred. Id. The FTCA's waiver of sovereign immunity is limited and subject to numerous exceptions, however, including the discretionary function exception outlined in 28 U.S.C. § 2680(a). Foster Logging, Inc. v. United States, 973 F.3d 1152, 1157 (11th Cir. 2020). Under this exception, the Government maintains its sovereign immunity as to "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The purpose of this exception is to "prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy . . . ." Foster Logging, 973 F.3d at 1157 (quoting United States v. Gaubert, 499 U.S. 315, 323 (1991)). Where the discretionary function exception

6

applies, no federal subject matter jurisdiction exists.  U.S. Aviation Underwriters, Inc. v. United States, 562 F.3d 1297, 1299 (11th Cir. 2009) (citing Gaubert, 499 U.S. at 334).  When the Government asserts the discretionary function exception as a challenge to subject matter jurisdiction, the burden is on the plaintiff to prove that the exception does not apply.  Cuadrado-Concepcion v. United States, 851 F. App'x 985, 990 (11th Cir. 2021) (quoting OSI, Inc., 285 F.3d at 951).  Here, the Government invokes the discretionary function exception for all claims relating to the design and content of the SAV ATCT's RVM and moves to dismiss these claims.  (See generally doc. 428.)

In United States v. Gaubert, the Supreme Court developed a two-part test to determine whether the discretionary function exception applies.  Foster Logging, 973 F.3d at 1157 (citing Gaubert, 499 U.S. at 322).  First, the court must examine the nature of the challenged conduct and determine if it is "discretionary in nature," asking whether the conduct involves an "element of judgment or choice."  Id.  (quoting Gaubert, 499 U.S. at 322).  This portion of the inquiry focuses on whether "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow."  Id. at 1158 (quoting Gaubert, 499 U.S. at 322).  If so, then there is no judgment or choice involved and the discretionary function exception does not apply.  Id. Otherwise, "it will be presumed that the particular act involved an element of judgment or choice." Zelaya, 781 F.3d at 1330.

If the challenged conduct is discretionary—that is, if it involves an element of judgment or choice—the court turns to the second step of the inquiry and determines "whether that judgment is of the kind that the discretionary function exception was designed to shield."  Foster Logging, 973 F.3d at 1157.  This step asks whether the judgment is "susceptible to policy analysis."  Id. at 1158 (quoting Gaubert, 499 U.S. at 325).  This inquiry is not concerned with "the subjective intent

7

of the government employee" or whether he or she "actually weighed social, economic, and political policy considerations before acting." Id. (quoting Ochran v. United States, 117 F.3d 495, 500 (11th Cir. 1997)).  "The inquiry here is not fact-based," looking instead to the *nature* of the challenged conduct in a general sense and asking whether the conduct would be expected to be grounded in policy questions—regardless of whether it actually was. Id. at 1159; see also Autery v. United States, 992 F.2d 1523, 1531–32 (11th Cir. 1993) ("Gaubert . . . cautions against conducting a fact-based inquiry . . . urging courts instead to look to the nature of the challenged decision in an objective, or general sense, and ask whether that decision is one we would expect inherently to be grounded in considerations of policy.") (internal quotations omitted).  Whether the government employee acted negligently in exercising their discretion is irrelevant. Foster Logging, 973 F.3d at 1166.

Before the Court can apply this two-step test, it must determine what specific conduct is at issue.  Autery, 992 F.2d at 1527.  Defendant characterizes Plaintiffs' claims as "relating to the design and content" of the RVM, arguing that "the issue is whether Briggs Field was required to be depicted on the [RVM] at the Savannah . . . facility." (Doc. 428, pp. 8, 10.)  Cross Defendants similarly characterize the conduct at issue as "the failure to depict Briggs Field on [the SAV ATCT's] RVM."  (Doc. 481, p. 5.)  By contrast, Plaintiffs contend that the "relevant act" is not the "design and content" of the RVM, but the specific omission of Briggs Field due to the SAV ATCT's ignorance.  (Doc. 461, pp. 19–20.)  Plaintiffs argue that this ignorance "is itself a violation of [Federal Aviation Administration ("FAA")] policy and procedure."  (Id. at p. 20.)

While each party offers their own framing of the conduct at issue, all three apparently agree that the overarching issue is whether the SAV ATCT was required to depict Briggs Field on its RVM.  Plaintiffs' characterization of the relevant conduct is too narrow, however.  See Hogan v.

United States, No. 7:10-CV-107 HL, 2012 WL 359706, at *4 (M.D. Ga. Feb. 2, 2012), aff'd sub nom. Hogan v. U.S. Postmaster Gen., 492 F. App'x 33 (11th Cir. 2012) (citing Autery, 992 F.2d at 1527) (defining the conduct at issue as the specific manner in which an employee carried out a policy is too narrow).  Further, the Complaint puts the design of the RVM at issue, alleging that "[SAV ATCT]" violated air traffic control policies, procedures, rules and regulations by providing . . . controllers with an RVM . . . that was inaccurate" and that the RVM "failed to list certain airports" that could have been utilized for landing.  (Doc. 387, p. 20.)  Plaintiffs have expressly contended elsewhere that "all airports within [SAV ATCT's] delegated airspace and/or area of responsibility were required to be depicted and/or displayed on [the] SAV ATCT [RVM] at the time of the accident . . . ."  (Doc. 461-32, pp. 4–5.)  The conduct at issue is thus the SAV ATM's design of an RVM which omitted certain airports within the airspace, and the question before the Court is whether this conduct constitutes a discretionary act within the ambit of the discretionary function exception.

## I.     Whether the Challenged Conduct was Discretionary in Nature

Turning to the two-part Gaubert inquiry, it must first be determined whether the SAV ATM was required to follow a specific course of action in designing the RVM under federal statute, regulation, or policy.  See OSI, Inc., 285 F.3d at 950 (internal citations omitted).  If so, then no judgment or choice was involved and the discretionary function exception does not apply.  Id. Plaintiffs bear the burden of proof here.  Id. at 951.  At this stage of the inquiry, it is not enough for Plaintiffs to point to general obligations under federal law.  Rather, "[o]nly when a federal employee acts contrary to a *specific prescription* in federal law—be it a statute, regulation, or policy—does the discretionary function exception not apply."  Shivers v. United States, 1 F.4th 924, 931 (11th Cir. 2021) (citing Gaubert, 499 U.S. at 322) (emphasis in original).

9

In arguing that Briggs Field was required to be depicted on the RVM, Plaintiffs and Cross Defendants cite two regulations which allegedly prescribe a mandatory course of action—Paragraph 7(d) of FAA Order JO 7910.1E and Paragraph 3-7-3 of FAA Order 7210.3Z. (Doc. 428-12, pp. 3–4; doc. 461, pp. 19–20; doc. 481, p. 6.) The Government, on the other hand, contends that these provisions afford ATMs *discretion* in designing RVMs. (Doc. 428, pp. 10–14; doc. 508, pp. 3–11; doc. 515, pp. 6–11.)

FAA Order 7910.1E "establishes procedures for the preparation and procurement of digital video map data" for use by FAA air traffic terminal facilities. (Doc. 428-13, p. 2.) Paragraph 7(d), entitled "Air Traffic Terminal Facilities' Responsibilities," outlines the role of an ATM in the production of RVMs. (Id. at p. 3.) Plaintiffs argue that "[s]ince the directives of FAA Order 7910.1E are mandatory and prescribe a course of action . . . the Order leaves no room for 'judgment or choice' in [SAV ATM's] conduct" and thus precludes the application of the discretionary function exception. (Doc. 461, p. 22.) But this Order affords ATMs more leeway in preparing RVMs than Plaintiffs represent. Paragraph 7(d) states that the "[m]ap data shown on each individual map is the responsibility of the Facility Manager" and that the map is to "meet the individual requirements of each facility." (Doc. 428-13, p. 3.) While each map must be accurate and "consistent with Air Traffic Facility requirements," (id.), this Order plainly affords facilities some discretion over the exact content of each RVM, leaving it to each ATM to identify the needs of their facility and select map data based on those needs. Importantly, nothing in this Order requires RVMs to include specific data, much less requires an ATM to include all private-use airports in an area. (See id.) At most, Order 7910.1E requires RVMs to "be geographically accurate," to be "operationally suitable for their use," and to comply with other Air Traffic Facility requirements. (Id. at pp. 2–3.) But by their very nature, these generalized terms leave discretion

to the ATM to determine what should be included in the RVM.  Put simply, Order 7910.1E did not

prescribe a specific course of conduct for the SAV ATM to follow in preparing the RVM.  As such,

this is Order is far more permissive than requirements that would bar the application of the

discretionary function exception.  Shivers, 1 F.4th at 931; see also Autery, 992 F.2d at 1429 (citing

Industria Panificadora, S.A. v. United States, 957 F.2d 886, 887 (D.C. Cir. 1992)) (general

directives that do not impose precise obligations do not establish mandatory requirements

depriving government employees of discretion).

Next, FAA Order JO 7210.3Z "provides direction and guidance for the day-to-day

operation of facilities and offices under" the FAA.  (Doc. 428-6, p. 2.)  Of particular importance is

Paragraph 3-7-3, which concerns display map data.  (Id. at p. 4.)  Paragraph 3-7-3 provides:

> To reduce scope clutter and increase operational efficiency, limit data on display
> maps to the following (except for subparagraph o, facility air traffic managers may
> delete items not required):
>     **a.** Airports/heliports.
> *NOTE−*
> *Mission Support Services, Air Traffic Support, AJV−5 will verify the accuracy of*
> *airport status on video maps they produce.  Facilities will be notified by AJV−5*
> *that new radar video maps (RVMs) will be sent when a depicted airport is no longer*
> *operational.*
>     **b.** Runway centerline extension and/or final approach course.
> *REFERENCE−*
> *FAAO JO 7110.65, Para 5−9−1, Vectors to Final Approach Course.*
>     **c.** Hospital emergency landing areas.
>     **d.** NAVAIDs and fixes.
>     **e.** Reporting points.
>     **f.** Airway/route centerlines.
>     **g.** Boundaries (control, special use areas, terminal buffer areas, outer fix holding
> pattern airspace areas, no transgression zones,
> etc.).
>     **h.** Handoff points.
>     **i.** Special use tracks (scramble, recovery, Instrument Departures, etc.).
>     **j.** Obstructions.
>     **k.** Prominent geographic features (islands, mountains, etc.).
>     **l.** Map alignment indicators.
>     **m.** Range accuracy marks.
>     **n.** Minimum vectoring altitudes in hundreds of feet; e.g., 23−2,300 ft.,
> 100−10,000 ft.

      **o.** Airports immediately outside your area of jurisdiction that are:
          **1.** Within airspace used to receive radar handoffs; and
          **2.** Depicted by the facility having jurisdiction over that airspace.
      **p.** Virtual intersection markings for non-intersecting converging runways if the
      flight paths intersect within 1NM beyond the departure end of both runways.

*NOTE−*
*The intent of subparagraph o is to assist controllers in making emergency airport*
*recommendations when inflight emergencies occur near facility boundaries.  There*
*is no intent to establish criteria for airport depiction.  However, insofar as facilities*
*having jurisdiction depict airports, then those same airports must be depicted on*
*the adjacent facility's video map.*
*REFERENCE−*
*FAAO JO 7110.65, Para 10−2−15, Emergency Airport Recommendation.*

(Id.)

The Government argues that Order JO 7210.3Z permits facility ATMs to delete unnecessary items and, as such, affords discretion to ATMs over what items should be included on the display.  (Doc. 428, p. 14.)  The Government also points to Subparagraph o and the subsequent note as evidence of the ATM's discretion.  The Government reasons that if air traffic control facilities had to depict every airport within their jurisdiction, there would be no need for the language making the depiction of airports in adjacent jurisdictions contingent on whether the adjacent facility has depicted it.  (Doc. 515, p. 9.)  Rather, "this language is only necessary where there is a chance that the adjacent facility . . . has not included the airport on its RVM."  (Id.)  The Government also notes that FAA Order JO 7210.3Z explicitly identifies mandatory procedures as those containing the words "shall" or "must."  (Doc. 428, p. 11; doc. 428-6, p. 3.)  While the Order expressly states that other maps "must" feature certain minimum features, Paragraph 3-7-3 contains no such language requiring RVMs to feature certain items.  (Doc. 428-8, pp. 4–5.)  Indeed, no order, regulation, or policy has been identified which states that private-use airports "must" be included in RVMs.

While Plaintiffs contest the Government's reading of FAA Order JO 7210.3Z, they do not argue that the Order mandates the depiction of all jurisdictional airports on RVMs and appear to

concede that the Order affords at least some limited discretion as to whether an airport is depicted. (Doc. 461, pp. 20, 26–27.)  Plaintiffs instead argue that the "only two permissible circumstances" under which an ATM may delete an item from an RVM under Paragraph 3-7-3 are when doing so is necessary to reduce scope clutter or improve operational efficiency.  (Id. at pp. 26–27.) Plaintiffs' reading of Paragraph 3-7-3 is questionable but, even if this reading is accepted, their argument fails.  Rather than prescribing a mandatory course of action, the language afforded the SAV ATM discretion to delete items from the RVM display—including for the rather open-ended reason of improving "operational efficiency."  Plaintiffs' reading of Paragraph 3-7-3 thus only strengthens the conclusion that the design of an RVM involves an element of judgment.

Cross Defendants contend that, when read in the context of the overall statutory framework, FAA Order JO 7210.3Z mandates including all private airports such as Briggs Field.  (Doc. 481, pp. 7–8.)  Cross Defendants point back to Order 7910.1E's requirements that all RVMs must be "geographically accurate for real-time navigation purposes," and "operationally suitable for their use," and that map data comply with air traffic facility requirements.  (Id. (quoting doc. 481-6, pp. 2–3).)  Cross Defendants further point to Paragraph 2-1-4 of Order JO 7210.3Z's requirement that ATMs maintain reference material containing a location listing of airports within their airspace. (Id. at p. 8 (citing doc. 481-7, pp. 3–4.)  Cross Defendants urge that, given these agency orders, "[i]t would defy logic to hold" that SAV ATM was not required to include Briggs Field on the RVM. (Id. at p. 8.)  Cross Defendants further note that Briggs Field was listed on an RVM prepared by an air traffic control facility in Jacksonville.  (Id.)

These arguments fail to establish that the SAV ATM was *required* to include Briggs Field on the RVM under a federal statute, regulation, or policy.  None of the general requirements of Order 7910.1E speak to the specific content of RVMs.  The ATM's obligation to maintain a location

listing of all airports within his jurisdiction does not obligate the ATM to include all such airports on the RVM. While one could conclude from these requirements and from the Jacksonville RVM's inclusion of Briggs Field that the SAV ATM was negligent in not including Briggs Filed on the Savannah RVM, negligence is irrelevant under the present analysis. Foster Logging, 973 F.3d at 1166.

Neither Plaintiffs nor Cross Defendants have identified a specific course of conduct which the SAV ATM was required to follow in preparing the RVM. Instead, the provisions cited afford ATMs discretion in designing RVMs. As such, the preparation of the RVM falls within the discretionary function exception. See Autery, 92 F.2d at 1529 ("Only if a federal statute, regulation, or policy specifically prescribes a course of action embodying a fixed or readily ascertainable standard, will a government employee's conduct not fall within the discretionary function exception.") (internal citation and quotations omitted); Cranford v. United States, 466 F.3d 955, 958 (11th Cir. 2006) ("We consider first whether the conduct involves an element of judgment or choice, *which will be the case unless a federal statute, regulation, or policy specifically prescribes a course of action* . . . .") (internal citations and quotations omitted) (emphasis added). The Court thus concludes that the selection of airports depicted on the SAV RVM included an element of judgment on part of the ATM, satisfying the first step of the Gaubert inquiry.

## II.      Whether the Challenged Conduct is of the Kind Intended to be Protected by the Exception

Turning to the second Gaubert step, the Court must determine whether the SAV ATM's design of the RVM is susceptible to policy analysis and therefore the kind of conduct that the exception is intended to protect. Foster Logging, 973 F.3d at 1158. The question at this stage is not whether the SAV ATM *actually* engaged in policy considerations when designing the RVM,

14

but whether one would *expect* the design of RVMs to generally include the consideration of policy. Id. at 1159.

The Government contends that deciding whether to depict a private-use airport such as Briggs Field is heavily informed by policy considerations. (Doc. 428, pp. 16–19.) Specific factors the Government identifies include "the frequency and overall number of aircraft receiving air traffic control services flying in and out of a particular airport, 'scope clutter' and the operational efficiency of the facility, as well as the resources necessary to train air traffic controllers." (Id. at p. 17 (citing doc. 428-14, pp. 7, 11).) Additionally, the Government notes that private-use airports such as Briggs Field "present unique considerations" related to safety and reliability. (Id.) Private-use airports operate without FAA oversight or regulation and are not subject to the minimum safety standards applicable to public-use airports. (Id.; doc. 428-14, p. 9.) Private-use airports typically do not have readily accessible weather reporting capability and are not required to issue notices of airport conditions, as public-use airports are. (Doc. 428-14, p. 9.) The Government argues that these considerations pose significant concerns when developing an RVM. (Doc. 428, p. 18.)

Plaintiffs claim that the actual reasons for omitting Briggs Field were "so far removed" from the policy considerations the Government identifies that those considerations cannot support the omission. (Doc. 461, p. 30.) Plaintiffs maintain that the omission resulted from the SAV ATM's ignorance of Briggs Field and that there was thus "no rational connection" between the omission and any FAA policies.[3] (Id. at p. 31.) Plaintiffs also argue that the SAV ATM could not

---

[3] Plaintiffs cite the Third Circuit Court of Appeals case Gotha v. United States to support their argument that the Government may not invoke the discretionary function exception by "emphasizing matters so remote from the circumstances of this case as to be useless." (Doc. 461, pp. 29–30 (citing 115 F.3d 176, 181–82 (3rd Cir. 1997)).) However, Gotha is inapt here. In Gotha, the court found that the discretionary function exception did not apply to the Navy's failure to provide a stairway with handrails to enable safe access to an office trailer, characterizing the Navy's conduct as "a mundane, administrative, garden-variety, housekeeping problem that is about as far removed from the policies applicable to the Navy's mission as it is possible to get." 115 F.3d at 181. The challenged conduct here does not involve general personnel safety

15

have exercised his supposed authority to "delete" unnecessary items pursuant to Paragraph 3-7-3 because, in order to "delete" an item, one must have been aware of its existence. (Id. at pp. 25–27.) Briggs Field was thus not "deleted" because the SAV ATM never knew of its existence. (Id.) Plaintiffs aver that "[t]he discretionary function was never meant to reward government employees for conduct that is the equivalent of operational ignorance." (Id. at p. 26 (citing Barna v. United States, 22 F. Supp. 2d 784, 786–87 (N.D. Ill. 1998)).) [4]

These arguments are unavailing. The Court is not concerned with whether the SAV ATM *actually* engaged in policy considerations. Foster Logging, 973 F.3d at 1159. Rather than looking at the facts, the Court considers the *nature* of the challenged conduct in a general sense and asks whether such conduct would be expected to be grounded in policy questions—regardless of whether it actually was. Id. Designing an RVM and selecting the airports to be displayed on it is an activity where one would generally expect policy concerns (such as safety and efficiency) to be considered. As the Government notes, an ATM deciding whether to depict a private-use airport must consider the unique needs of their facility and weigh numerous considerations such as "the frequency and overall number of aircraft receiving air traffic control services flying in and out of a particular airport, 'scope clutter' and the operational efficiency of the facility, as well as the

---

measures, but the creation of an RVM—conduct directly relevant to the FAA's mission of maintaining safety in aviation.

[4] Plaintiff attempts to analogize this case to Barna v. United States from the Northern District of Illinois. (Doc. 253, pp. 19–20 (citing 22 F. Supp. 2d 784, 786 (N.D. Ill. 1998)).) Barna declined to apply the discretionary function exception to the National Oceanic and Atmospheric Administration's ("NOAA") failure to depict trees on a map because of apparent ignorance of the trees' existence. 22 F. Supp. 2d at 786. Barna is persuasive authority at best, and the Court finds that it is inapposite here. Crucial to the court's decision was that NOAA was subject to a binding requirement to "consider" all obstacles such as the trees and thus the court could not characterize an apparent failure to do so as an act of discretion. Id. Plaintiff has not identified any analogous requirement that the SAV Manager "consider" all airports for inclusion on RVMs (beyond what is specifically required by Paragraph 3-7-3, subparagraph O of Order JO 7210.3).

16

resources necessary to train air traffic controllers, to name just a few." (Doc. 428, p. 17 (citing doc. 428-14, pp. 8–11).) Government conduct that involves the balancing of different interests and considerations is generally found to be grounded in policy. See, e.g., Autery, 992 F.2d at 1531 (holding that the Park Service's "likely" balancing of different considerations in deciding on a method of inspecting hazardous trees involved policy considerations); Cranford, 466 F.3d at 960 (holding that government decisions in marking a shipwreck are grounded in policy as they involve a balancing of different needs and interests). Moreover, whether the SAV ATM was negligent in failing to learn of or include Briggs Field is irrelevant. Foster Logging, 973 F.3d at 1166. Abuse of discretion is similarly irrelevant. 28 U.S.C. § 2680(a); see also Shivers, 1 F.4th at 928 ("The upshot of § 2680(a) is that when the United States's performance of a 'function or duty' involves discretion, the fact that the discretion was misused or abused in any way does not lead to liability for the [Government].").

Plaintiffs and Cross Defendants other arguments for their contention that the SAV ATM's conduct is not susceptible to policy analysis are unpersuasive. Plaintiffs argue that the SAV ATM's decisions "were not the kind of conduct grounded in regulatory policy" because one would not expect an ATM to make choices informed by policy goals. (Doc. 461, pp. 28–29 (citing Sexton v. United States, 132 F. Supp. 2d 967, 988 (M.D. Fla. 2000)).) This argument is squarely rejected by the Supreme Court's holding in Gaubert that "[d]iscretionary conduct is not confined to the policy or planning level. It is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case." 499 U.S. at 325 (internal quotations omitted). Rather than looking to the official responsibilities of a given officer and asking whether they include an assessment of policy considerations, the Gaubert Court held that there is a presumption that an officer's acts are grounded in policy when acting within their

17

discretion.  Id. at 324.  As the Eleventh Circuit has recently noted, "the Supreme Court has long recognized" that the discretionary function exception "extends beyond high-level policymakers and includes government officials at any rank exercising discretion."  Foster Logging, 973 F.3d at 1162 (internal citations omitted).  It is thus immaterial whether the SAV ATM was expressly tasked with making policy determinations.

Cross Defendants attempt to analogize this case to Swafford v. United States, 839 F.3d 1365 (11th Cir. 2016).  (Doc. 481, p. 11.)  In Swafford, the Eleventh Circuit held that the Government's failure to safely maintain stairs which it had built fell outside the discretionary function exception because "once the [Government] exercised its discretion to build *and* maintain the stairs, failure to maintain them in a safe condition is simply not a permissible exercise of policy judgment."  839 F.3d at 1371–72.  The Eleventh Circuit explained that its decision aligned with Indian Towing Co. v. United States, 350 U.S. 61, 64–65 (1955), where the Supreme Court held that, while the Government had discretion over whether to build a light house, operational decisions over its maintenance did not involve the same considerations.  The Eleventh Circuit in Swafford explained that, like the lighthouse maintenance in Indian Towing, operational decisions over stairway maintenance did not involve policy considerations and were thus not a discretionary function.  839 F.3d at 1371.  But the situation at hand is the reverse of that posed by Swafford and Indian Towing.  Unlike the decision of whether to build the lighthouse or the stairwell, the Government is not arguing that the SAV ATM had discretion over whether to implement an RVM. He did not.  Instead, the Government is arguing that, unlike stairwell and lighthouse maintenance, decisions at the operational level here, including what to include in an RVM, implicate policy considerations. As explained above, the Court agrees.  See, Gaubert, 499 U.S. at 325 (holding that discretionary function can extend to managerial and operational decisions including day-to-day

18

management of banking and overruling court of appeals because it misread precedent to "as perpetuating a nonexistent dichotomy between discretionary functions and operational activities").

The arguments that Plaintiffs and Cross Defendants offer are thus unpersuasive. The purpose behind the discretionary function exception supports applying the exception here as the selection of data for display on RVMs implicates numerous policy concerns. (See doc. 428-14, pp. 7, 9, 11); see also Hartman v. United States, No. CIV-10-197-L, 2013 WL 501346, at *7 (W.D. Okla. Feb. 8, 2013) ("[T]he information displayed on the air traffic controller's radar screen . . . clearly involve[s] policy-based judgments that are of the type that the discretionary function exception to the FTCA was designed to shield from liability.").

## CONCLUSION

The SAV ATM's design of the RVM at issue involved an element of judgment and is susceptible to policy analysis. As such, the discretionary function exception applies, and the Court has no subject matter jurisdiction over claims related to the design and content of the RVM. Accordingly, the Court **GRANTS** the Government's partial Motion to Dismiss all claims in Count I related to the design of the RVM. (Doc. 428.)

**SO ORDERED**, this 13th day of March, 2026.

_____
R. STAN BAKER, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA