**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

|  |  |
|---|---|
| JOHN HARTWELL COCKE, as Executor of the Estate of WILLIAM BYRON COCKE, *et al.*, | |
| Plaintiffs, | CIVIL ACTION NO.: 4:19-cv-169 |
| v. | |
| UNITED STATES OF AMERICA, *et al.*, | |
| Defendants. | |

**O R D E R**

The Magistrate Judge entered an Order resolving twelve motions to exclude experts filed pursuant to Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). (Doc. 526.) Plaintiffs object to the portions of the Order excluding the testimony of their expert Charles M. Pereira, (doc. 533), and the portions of the Order partially excluding the testimony of their expert Colin Sommer, P.E. (doc. 534). Defendant, the United States of America, responded to both objections, (docs. 549 & 550), and Defendants Aviation Development Group, LLC ("ADG") and Thomas Huff responded to Plaintiffs' objection regarding Pereira, (doc. 551).

**STANDARD OF REVIEW**

The Magistrate Judge's Order is subject to a deferential standard of review. The statute governing referrals to the Magistrate Judge provides:

[A] judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a

claim upon which relief can be granted, and to involuntarily dismiss an action.   A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.

28 U.S.C. § 636(b)(1)(A).   When considering a plaintiff's objections to the magistrate judge's ruling on these non-dispositive matters, the reviewing court must "modify or set aside any part of the order that is clearly erroneous or is contrary to law."   Fed. R. Civ. P. 72(a); see also Stewart v. Johnson, 2021 WL 6752312, at *1 (S.D. Ga. Aug. 10, 2021) (finding a motion to exclude to be a non-dispositive pretrial evidentiary motion even where it will have some effect on the outcome of the matter).   Otherwise, the magistrate judge's ruling stands.

"A ruling is clearly erroneous where either the magistrate judge abused his discretion or the district court, after reviewing the entirety of the record, is left with a definite and firm conviction that a mistake has been made."   Jackson v. Deen, 2013 WL 3991793, at *2 (S.D. Ga. Aug. 2, 2013) (citing Pigott v. Sanibel Dev., LLC, 2008 WL 2937804, at *5 (S.D. Ala. July 23, 2008)).   A decision by the magistrate judge is contrary to law when it "fails to follow or misapplies the applicable law."   Id. (citations omitted).   In another context, the Eleventh Circuit Court of Appeals has recognized that "[c]lear error is a highly deferential standard of review."   Holton v. City of Thomasville School Dist., 425 F.3d 1325, 1350 (11th Cir. 2005).

## DISCUSSION

**I.      The Portions of the Order to which Neither Party Objects are Affirmed.**

As referenced above, Plaintiffs challenge the portions of the Magistrate Judge's Order excluding the opinions of their experts Charles Pereira and Colin Sommer.   (See generally docs. 533 & 534.)   The Order also resolved the parties' disputes over the opinions of ADG and Huff's experts W. Jeffrey Edwards, (doc. 526, pp. 50–54), Douglas Stimpson, (id. at pp. 54–56), and Kevin S. Karpe (id. at pp. 56–57), Plaintiffs' experts Mark N. Callender, (id. at pp. 33–50), John

Canoles, (id. at pp. 17–33), Jameel F. "J.F." Joseph, (id. at pp. 57–72), and Marc Fruchter, (id. at pp. 97–104), and the United States' expert Darren Gaines, (id. at pp. 104–107).   No party objects to the Magistrate Judge's disposition of the motions challenging these experts.   (See generally docs. 533 & 534.)   Therefore, the portions of the Magistrate Judge's Order resolving the motions enumerated below are **AFFIRMED**:

- Defendant United States' Motion to Exclude Certain Testimony from ADG/Huff's Experts, (doc. 408);

- Defendant United States' Motion to Exclude the Testimony of Plaintiffs' Expert Mark N. Callender, Ph.D., (doc. 409);

- Defendant United States' Motion to Exclude the Testimony of Plaintiffs' air traffic control ("ATC") Expert John D. Canoles, (doc. 410);

- Defendants Aviation Development Group, LLC and Thomas Huff's Corrected Motion to Exclude in part Expert Testimony of John D. Canoles, (doc. 439);

- Defendant United States' Motion to Exclude the Testimony of Plaintiffs' Expert Jameel F. "J.F." Joseph, (doc. 411);

- Defendants Aviation Development Group, LLC and Thomas Huff's Corrected Motion to Exclude the Testimony of J.F. Joseph, (doc. 443);

- Defendants Aviation Development Group, LLC and Thomas Huff's Corrected Motion to Exclude in part Expert Testimony of Marc Fruchter, (doc. 441); and

- Defendants Aviation Development Group, LLC and Thomas Huff's Corrected Motion to Exclude in part Expert Testimony of Darren Gaines, (doc. 442).

(Doc. 526, pp. 107–108.)

## II.    The Challenged Portions of the Magistrate Judge's Order

The Court now turns to the portions of the Magistrate Judge's Order objected to by the Plaintiffs.   The Order granted the United States' Motion to Exclude the Testimony of Plaintiffs' Expert Charles Pereira, (doc. 412), and dismissed ADG and Huff's Motion to Exclude Pereira's testimony, (doc. 446), as moot.   (See doc. 526, pp. 73–87.)   The Order also granted, in part, both

the United States' Motion to Exclude the Testimony of Plaintiffs' Expert Colin Sommer, (doc. 416), and ADG and Huff's Motion to Exclude in part the Testimony of Colin Sommer, (doc. 448). (See doc. 526, pp. 87–97.)   Plaintiffs object to these dispositions.   (Docs. 533 & 534.)

As the Magistrate Judge's Order explains, the framework for analyzing the admissibility of expert testimony is provided by Federal Rule of Evidence 702 as well as the Supreme Court's decision in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), and its progeny. (Doc. 526, pp. 12–17.)   In the Eleventh Circuit, a court determining the admissibility of expert testimony must consider whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004).   The proponent of the expert bears the burden of establishing qualification, reliability, and helpfulness by a preponderance of the evidence.   Daubert, 509 U.S. at 592 n.10.   Plaintiffs do not object to the Order's recitation of the general legal standard applicable to expert testimony, although they do object to the application of the standard to Pereira's work product and to the specific legal standard applied to Sommer's accident reconstruction testimony.   (See doc. 533, pp. 7–18; doc. 534, pp. 4–11.)   Those specific objections are addressed below.

**A. Charles Pereira**

Plaintiffs identified Charles Pereira as an expert in flight path reconstruction, simulations, and animations.   (Doc. 526, p. 73 (citing doc. 475, p. 1; doc. 471, p. 1; doc. 412-1).)   As the Magistrate Judge summarized, Pereira's work in this case can be divided into three broad categories: (1) flight path and event reconstruction for the accident flight; (2) flight path and event

4

analysis for hypothetical post-engine failure scenarios, or "simulations"; and (3) "animations" that depict the flight path of the accident airplane.  (Id. at p. 74.)  Plaintiffs' objection confirms that the Magistrate Judge correctly identified the three categories of Pereira's work product.  (See doc. 533, pp. 4–5.)  Both the United States and ADG and Huff moved to exclude portions of Pereira's testimony and work product.  (Doc. 412 (United States' Motion); doc. 446 (ADG and Huffs' Motion).)  The United States moved to exclude Pereira's testimony based on the work of a third party, Dennis Crider, which, as discussed below and in the Magistrate Judge's Order, includes both the simulations and animations, (doc. 412, p. 9; doc. 526, p. 79, 81–82).  The United States separately moved to exclude Pereira's testimony about his simulations as unhelpful and speculative.  (Doc. 412, pp. 9–29; see also doc. 526, p. 73 n.6.)  ADG and Huff moved to exclude Pereira's testimony about his animations.  (See generally doc. 446; see also doc. 526, p. 73.)  The Magistrate Judge granted the United States' Motion, finding that Plaintiffs had not met their burden of demonstrating the reliability of Pereira's testimony based on his simulations or animations and excluding him from testifying about either.  (Doc. 526, pp. 82, 86–87.)  Based on that determination, the Order dismissed ADG and Huff's Motion as moot.  (Id. at p. 87.)

Plaintiffs object.  (See generally doc. 533.)  They argue that the Magistrate Judge's characterization of the record regarding equations embedded in two proprietary computer programs, Glide and LATS_anim, is clearly erroneous, (id. at pp. 7–11), that the Order's blanket exclusion of Pereira's testimony about both his simulations and his animations is too broad, (id. at pp. 11–14), and that the Order's application of Daubert is contrary to law, (id. at pp. 14–17).  These arguments are unavailing.  The Court will address each argument based on the category of excluded testimony (either Pereira's simulations or animations) to which it is relevant and will separately address Plaintiffs' arguments related to Pereira's flight path and event reconstruction.

### (1)    Pereira's Simulations and Reliance on Glide

Pereira's simulations were created using a proprietary software called "Glide," which was specifically written and created for this case by Pereira and a third-party contractor, Dennis Crider. (Doc. 526, pp. 76–78; see also doc. 533, p. 11 (confirming that Glide's output "consisted of hypothetical post-engine failure scenarios—projections of what the airplane could have done under various assumed conditions.").)   The Magistrate Judge identified two methodological gaps that rendered Pereira's Glide-produced simulations and related testimony unreliable.   (Doc. 526, pp. 82–84.)   First, although Pereira testified that he "put together a plan and a design scheme" for what would become the Glide software, he was unable to specifically identify the equations from that plan.   (Id. at pp. 77, 82 (quoting doc. 412-2, pp. 11–12).)   When questioned about the calculations done by the Glide program, Pereira referred generally to textbooks that would contain the equations, describing them as "long-established aerodynamic equations," (id. (quoting doc. 412-2, p. 20)), but he did not—and seemingly could not—identify the specific calculations the program did, (id. at pp. 77–78).   He testified during his deposition that he was involved "to some extent" with determining the data input, the data output, and the equations used in the Glide software, but "not completely."   (Id. at p. 77 (quoting doc. 412-2, p. 18).)   Pereira produced the data that he input into the Glide system and the output in graphical format, (id. at pp. 76–78), but the Magistrate Judge found the actual equations run by the program to be unknown to the Court and the opposing parties, (id. at p. 78).   Second, even if Pereira had been able to identify the calculations he included in the plan for the Glide program, "the Court would have to rely entirely on his assertion that Crider, a third-party who has not been identified as an expert in this case, took Pereira's 'plan' and correctly coded it into the software."   (Id. at p. 82.)

After considering Pereira's testimony about Glide and the simulations, the Magistrate Judge

found Plaintiffs failed to meet the reliability standard for that testimony since "[t]he calculations embedded in the Glide program underpinning Pereira's simulations have not been tested," and, though Pereira referred to the equations as "well-known in the industry," the specific equations remain unknown.  (Doc. 526, p. 84.)   The program has not been peer-reviewed or otherwise tested, and the Order found that "Pereira's assurances that the software is 'self-validating' are not enough," since the Court cannot simply take Pereira's word that the software is reliable and, more obviously, cannot take Crider's word, through Pereira, that the software is reliable.   (Id. (citing Hendrix ex rel G.P. v. Evenflo Co., Inc., 609 F.3d 1183, 1194 (11th Cir. 2010) ("[N]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.   Rather, the trial court is free to conclude that there is simply too great an analytical gap between the data and the opinion proffered.").)

Plaintiffs argue that the Magistrate Judge's factual findings relevant to the Glide program are clearly erroneous because "the deposition record reflects considerably more" than the Order discussed.  (Doc. 533, p. 9.)   However, a review of the Objection's summary of Pereira's testimony reveals that it is consistent with the Magistrate Judge's discussion of that same testimony.   The Objection recounts Pereira's testimony that the equations in the Glide software are "related to glide ratio, lift over drag, flight path angle, coefficient lift, angle of attack, pitch attitude," and come from "standard, widely published aerodynamic textbooks."   (Id. (quoting doc. 412-2, pp. 20–21.).)   The Magistrate Judge's Order identified this exact testimony.   (Doc. 526, pp. 77–78.)   The Objection further argues that the Magistrate Judge failed to consider Pereira's testimony about the "parameters and data" that went into the Glide software.   (Doc. 533, p. 10.) But the Magistrate Judge acknowledged that Pereira provided the files containing the parameters

7

used in the simulations, including the data run though the Glide program.   (Doc. 526, p. 78.)   The Magistrate Judge's reliability determination was not based on a lack of information about the data inputs, but a lack of information about the calculations, formulas, or equations using that data to create the simulation outputs.   (Id. at pp. 77–78, 81–84.)   Therefore, Plaintiffs have demonstrated no error, much less clear error, in the Magistrate Judge's factual findings related to Pereira's testimony about Glide and its use in creating his simulations.

Plaintiffs also argue that the Magistrate Judge's application of the Daubert factors to Pereira's Glide-related testimony is contrary to law because the appropriate mechanism for Defendants to challenge Pereira's use of the proprietary software is cross-examination, not exclusion.   (Doc. 533, pp. 14–16.)   Their Objection cites a case from the United States Court of Appeals for the District of Columbia Circuit, where the appellate court found that an expert who "could not explain the inner workings of the software that generated" certain outputs could still testify about those outputs, since Rule 702 does not require an expert "to have a sophisticated understanding of the software underlying [his] technical tools."   (Id. at p. 14 (quoting United States v. Morgan, 45 F.4th 192, 203 (D.C. Cir. 2022)).   In that case, contrary to Pereira's use of a software designed and built by a third party for use in this specific case, the expert used "a technological tool that has earned wide acceptance in a relevant industry, and he used the tool in its customary manner."   Morgan, 45 F.4th at 203.   Therefore, the expert's inability to "explain a proprietary algorithm did not pose a categorical bar to a finding of reliability."   Id.   As intimated above, Pereira's reliance on Glide is different.   The program did not exist before it was developed for use in this case.   This lack of peer review or testing was specifically identified by the Magistrate Judge as a significant factor justifying the testimony's exclusion.   (Doc. 526, pp. 82–84.)   The Magistrate Judge's application of the Daubert factors to this record was not contrary to law, so Plaintiffs' Objection on this score

8

is **OVERRULED**.   The Court **AFFIRMS** the Order's determination that Pereira's methodology related to Glide and its produced simulations did not meet the reliability requirement.

### (2)      Pereira's Animations and Reliance on LATS_anim

The Magistrate Judge's Order found that Pereira relied on another program created by Crider, LATS_anim, to create his animations for this case.  (Doc. 526, p. 78–79.)  Plaintiffs' Objection describes LATS_anim as "a Java rewrite of software" Pereira routinely used when working for the National Transportation Safety Board.  (Doc. 533, p. 5.)   Citing Pereira's deposition testimony, the Magistrate Judge found that Crider coded the LATS_anim program and ran datasets provided by Pereira through LATS_anim, provided the output to Pereira, who then used that output in another program (Insight) to create the final animations.  (Doc. 526, pp. 78–79.)  Plaintiffs' objection confirms that "parameters displayed in the animations—pitch, bank, track, and calculated airspeed—were derived through . . . LATS_anim, before being fed into Insight."  (Doc. 533, p. 5.)   The data file created by LATS_anim was not produced in this case. (Doc. 526, p. 79.)

The challenged Order found that Plaintiffs failed to demonstrate the reliability of Pereira's methodology as it relates to his use of LATS_anim.  (Doc. 526, pp. 84–85.)  The Magistrate Judge considered Plaintiffs' argument that the program is "identical to the proprietary software used by the NTSB for this exact purpose and utilizes the same widely accepted mathematical formulas that have been used in aviation for a century," and determined there was nothing in Pereira's deposition testimony to satisfy the Court that Crider, who is not an expert in this case, developed and coded LATS_anim identically to some other well-known software.  (Id.  at p. 85 (quoting doc. 475, p. 7).)   The Magistrate Judge cited Pereira's own testimony that he would have to inquire with Crider about how he coded certain things within LATS_anim as evidence that he

was not fully knowledgeable about the specific program.   (Id.)   The Order found the Court could not assess the reliability of the calculations run by LATS_anim, "except to take *both* Pereira *and* Crider's word for it," which, under Daubert, is not sufficient.   (Id.)

Plaintiffs argue that the Magistrate Judge's factual findings related to Pereira's use of LATS_anim are clearly erroneous.   (Doc. 533, pp. 7–9.)   Plaintiffs explain the type of calculations run by LATS_anim (though not the calculations themselves), that LATS_anim is a different version of existing software which performs these same types of calculations, why the program is necessary, and that the program applies calculations that can be found in standard textbooks.   (Id.)   These facts were all considered by the Magistrate Judge.   (Doc. 526, pp. 78–79, 84–85.)   Plaintiffs' Objection thus fails to show that any of the Magistrate Judge's factual findings about LATS_anim were clearly erroneous.

Similar to their arguments related to Glide, Plaintiffs argue that any gaps in Pereira's knowledge about LATS_anim are appropriate for cross-examination, and exclusion is unwarranted.   (Doc. 533, pp. 14–16.)   They contend that Defendants "are not confronting a black box," (id. at p. 16), but that is close to what Defendants encounter with the LATS_anim software. The Magistrate Judge correctly observed that "Crider created and wrote the LATS_anim software, received files from Pereira that he then input into his LATS_anim software, and then provided the output from LATS_anim to Pereira for him to use in the Insight software."   (Doc. 526, p. 85 (internal citations omitted).)   Crider was not named as an expert and could not be directly questioned about the software, how he created it, or how he used it.   (Id.)   What happened to turn the data from Pereira into the output that went into Insight is thus essentially a "black box."   The Magistrate Judge's application of the Daubert factors to this record was not contrary to law, so Plaintiffs' Objection on this score is **OVERRULED**.   The Court **AFFIRMS** the Order's

10

determination that Pereira's methodology related to LATS_anim did not meet the reliability requirement.

### (3) Pereira's Flight Path Reconstruction and Event Timeline

Defendants challenged Pereira's testimony related to his reliance on the Crider-created software programs, and the Magistrate Judge's analysis focused on those two categories of testimony. (Doc. 526, pp. 79–87.) Therefore, in granting the United States' Motion, the Magistrate Judge found that Pereira's use of Glide and LATS_anim, including his animations and simulations, did not meet the reliability required by Daubert and Rule 703. (Id. at p. 87 ("Pereira is excluded from testifying about both his simulations and his animations.").) Plaintiffs argue that "Pereira should, at a minimum, be permitted to testify about the actual flight path and event timeline . . . ." (Doc. 533, p. 12.) Because this testimony "is derived from recorded factual data and Mr. Pereira's professional expertise," and is "grounded in the raw recorded data itself," it is thus "verifiable without reference to any proprietary software." (Id.) The United States disagrees, arguing that Pereria's flight path reconstruction depends on the LATS_anim software. (Doc. 549, pp. 3–4.) As discussed above, the Magistrate Judge properly excluded as unreliable any testimony from Pereira that relies on either Glide, LATS_anim, or both. As Pereira's simulations and animations were produced using these programs, they are thus excluded. (Doc. 526, p. 87.) If Plaintiffs can establish that some of Pereira's anticipated testimony outside of his animations and simulations can be separated completely from any reliance on Glide or LATS_anim, then they may raise any disputes about the scope of the Magistrate Judge's Order and its application to specific anticipated testimony in a pre-trial motion in limine. At this point, Plaintiffs have not explained what specific anticipated testimony would fall outside the scope of the Magistrate Judge's ruling. Thus, Plaintiffs' objection on this point does raise any clear error

with the Magistrate Judge's Order, or otherwise establish that it is contrary to law by sweeping too broadly. Thus, the Court **AFFIRMS** the Order as written.

### B.    Colin Sommer

Plaintiffs identified Colin Sommer as an accident reconstruction expert.   (Doc. 526, p. 87.) Both the United States and ADG and Huff moved to exclude portions of his testimony.   (Doc. 416 (United States' Motion); doc. 448 (ADG and Huff's Motion).)   The Magistrate Judge granted in part and denied in part both the United States' Motion, and ADG and Huff's Motion.   (Doc. 526, p. 108).   Neither Plaintiffs nor ADG and Huff object to the Magistrate Judge's disposition of ADG and Huff's Motion.   (See generally doc. 534.)   Therefore, the Magistrate Judge's Order, (doc. 448), as to that Motion is **AFFIRMED**.   Plaintiffs also do not object to the Magistrate Judge's disposition of the United States' challenge to Sommer's opinions about air traffic control. (Compare doc. 526, pp. 91–92, with doc. 534, p. 2.)   That disposition is also **AFFIRMED**.   (Doc. 526, pp. 91–92.)   Plaintiffs do object to the portion of the Magistrate Judge's Order that excluded Sommer's opinions about the airplane's glide capabilities as unreliable and the portion of the Order that excluded Sommer's testimony about the propeller and a Garmin 796 GPS for Plaintiff's failure to timely disclose it.   (Doc. 534, p. 2.)

The Magistrate Judge's Order excluded Sommer from opining about the glide capabilities of the subject aircraft because, although Sommer employed some of his own rudimentary methodology, he relied on information and conclusions from Pereira to render his ultimate opinion that the aircraft could have "easily been able to make it to Briggs Field Airport from the first indication of the emergency." (Doc. 526, pp. 88–91.)   Because the Order excluded Pereira's simulations as unreliable, it also excluded Sommer's testimony based on those unreliable simulations.   (Id. at p. 90.)   Plaintiffs object, arguing that Sommer's glide capability testimony

was not based solely on Pereira but also on the findings of Plaintiffs' expert Mark Callender, whose relevant testimony has not been excluded.  (Doc. 534, pp. 4–6.)  Plaintiffs chiefly argue that, even if Pereira's work itself is inadmissible, that does not render Sommer's work inadmissible as it is not based solely on Pereira's work.  (Id.)  The Magistrate Judge found that Plaintiffs did not attempt to "parse out which portions of [Sommer's] opinion about the 'obtainable' airports "within glide distance"' were derived independently of Pereira's excluded simulations," and therefore found that Plaintiffs had not met their burden of demonstrating the admissibility of those opinions. (Doc. 526, p. 91.)  That determination was based on Plaintiffs' own arguments that Sommer's opinions were based on "work done by Pereira and Callender," that Sommer had discussions with both experts, reviewed both experts' work, and relied on both experts' work to "bolster or support his own" work.  (Doc. 460, pp. 2, 15–16.)  Indeed, "Sommer . . . testified that [his] opinions were 'based on Pereira's calculations . . .' and that he 'was looking at what Pereira did'" when formulating his own opinions.  (Id. at p. 15.)  There is thus nothing clearly erroneous in the Magistrate Judge's conclusion that Plaintiffs' "failed to parse the independent basis for Sommer's opinion," and Plaintiffs' objection to that conclusion is **OVERRULED**.

Plaintiffs' Objection also argues the Magistrate Judge applied the wrong Daubert standard for accident reconstruction experts.  (Doc. 534, pp. 6–7.)  However, the exclusion of Sommer's glide capability testimony was based on his reliance on Pereira's excluded opinions and testimony, and the Magistrate Judge cited to persuasive authority in reaching that decision.  (Doc. 526, pp. 89–90.)  Nothing in Plaintiffs' Objection alters that analysis, and it is therefore **OVERRULED**. The exclusion of Sommer's opinion about whether Cypress Lakes or Briggs Field were within the aircraft's glide path is **AFFIRMED**.

Pursuant to Federal Rule of Civil Procedure 37, the Order also excluded Sommer's testimony about the airplane's propeller because of Plaintiffs' untimely disclosure of that testimony. (Doc. 526, pp. 92–95). Plaintiffs argue the Order's exclusion of the propeller testimony was erroneous because the United States suffered no prejudice from their failure to timely disclose this testimony. (Doc. 534, pp. 7–10.) The Order correctly recites Federal Rule of Civil Procedure 26's requirements for the timely disclosure of expert testimony. (Doc. 526, p. 34.) It also correctly observes that a party violating Rule 26(a) is not allowed to use the non-disclosed information unless the failure was substantially justified or harmless, and that the party violating the Rule bears the burden of establishing that its non-disclosure was substantially justified or is harmless. (Id. at p. 35.) The Magistrate Judge considered both the circumstances of the disclosure of the propeller testimony (which was altered during Sommer's deposition) and how it related to the opinions disclosed in Sommer's original Report, concluding that Plaintiffs had violated Rule 26(a) and had failed to show that the untimely disclosure was substantially justified or harmless. (Id. at pp. 92–94.) Plaintiffs reassert their arguments that the Magistrate Judge already considered, (doc. 534, pp. 7–9), but they do not identify any clear error in the Magistrate Judge's determination that the untimely disclosure was not harmless. That determination is **AFFIRMED**.

Similarly, the Order excluded Sommer's testimony about his use of an exemplar Garmin GPS device since his use of the GPS device and any opinions developed as a result were never disclosed. (Doc. 526, pp. 94–95.) Plaintiffs do not challenge this exclusion during their case-in-chief but argue the exclusion should not extend to any possible rebuttal. (Doc. 534, p. 10.) The Court need not reach this issue now. If circumstances arise during trial that Plaintiffs believe render Sommer's testimony about the Garmin admissible, they may raise the issue, in the

appropriate way, at that time.   For now, the Magistrate Judge's Order excluding the Garmin GPS testimony is **AFFIRMED**.

**CONCLUSION**

For the reasons discussed above, Plaintiffs' Objections, (docs. 533 & 534), are **OVERRULED**, and the Magistrate Judge's Order, (doc. 526), is **AFFIRMED**.

**SO ORDERED**, this 28th day of July, 2026.

_____
R. STAN BAKER, CHIEF JUDGE
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA